## COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 7, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP310**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020TP23

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.K.V., A PERSON UNDER THE AGE OF 18:

WINNEBAGO COUNTY DEPARTMENT OF HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

B.K.V.,

    RESPONDENT-APPELLANT.

       APPEAL from an order of the circuit court for Winnebago County: DANIEL J. BISSETT, Judge. *Affirmed.*

¶1 LAZAR, J.[1] B.K.V. (hereinafter Brenda)[2] appeals an order terminating her parental rights. She seeks a new trial on the grounds that she discharged her second attorney who failed to withdraw, in violation of SCR 20:1.16(a), prior to the circuit court's dispositional hearing at which it granted Winnebago County Department of Human Services' petition for termination of her parental rights (TPR). Brenda also asserts that the court made an unfair determination of her credibility at her post-disposition remand hearing and that a new trial is warranted in the interest of justice pursuant to WIS. STAT. § 805.15(1), or in the alternative, to remedy a miscarriage of justice with a discretionary reversal pursuant to WIS. STAT. § 752.35. Because this court determines that none of Brenda's arguments justify a new trial, the order of the circuit court is affirmed.

## BACKGROUND

¶2 The County filed a petition seeking termination of both Brenda's and Neil's parental rights as to their daughter, Amelia, on July 28, 2020.[3] Brenda entered a denial to the petition on October 8, 2020, and reserved her right to a jury trial. On August 23, 2021, Neil asked the circuit court to no longer have his

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). It is also "given preference" and a decision has been issued in under thirty days after the deadline for the reply brief. *See* WIS. STAT. RULE 809.107(6)(e). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] This court refers to the mother and father of the child, as well as the child, by pseudonyms in order to protect the confidentiality of the child. *See* WIS. STAT. RULE 809.19(1)(g).

[3] Though not relevant to this appeal, the County also prevailed in its efforts to terminate the parental rights of Amelia's father (Neil).

attorney from the public defender's office represent him in the TPR case. His request was granted.

¶3    On April 14, 2022, Neil's second attorney sought court permission to withdraw. Over Neil's objection, the circuit court allowed the withdrawal. Brenda, even though she arrived late for that hearing, was present when her attorney was asked if she had a position on whether Neil's second counsel should be permitted to withdraw and when the court ordered that withdrawal.

¶4    At a hearing on September 22, 2021, Brenda informed the circuit court that she wanted her "attorney withdrawn and [to] have new counsel" appointed. The court explained to Brenda that the general policy of the public defenders' office is to appoint a replacement attorney only once, which Brenda acknowledged. On October 11, 2021, Attorney Karen Lueschow was appointed to represent Brenda. Right after her appointment, Lueschow advocated to allow Brenda to have a jury trial on the grounds/fitness phase of the TPR case.

¶5    The case was set for jury trial on the first phase on August 2, 2022.[4] Instead of proceeding with trial, however, Brenda changed her plea to "no contest" as to the grounds/fitness phase of the termination process and requested that a dispositional hearing with respect to the best interests of the child be scheduled for a date forty-five days later. Brenda responded under oath[5] to numerous questions from her counsel, the County's counsel, and the circuit court indicating that she

_____

[4] The first jury trial date in April, 2022, was adjourned to allow a (speedy) criminal jury trial to proceed.

[5] The colloquy, unlike many, was conducted after Brenda was sworn in and her statements to the circuit court were made under oath.

understood her rights and options as well as the consequences of her plea. She also answered affirmatively to the court's question about whether she was "satisfied with the legal advice and assistance [she had] received from [her] attorney." She denied being forced or threatened to change her plea. At the end of the court's colloquy with Brenda, the court gave her one more opportunity to object, to wit:

> **Q:** Is there anything else you wish to tell me or say on the record here today involving the grounds for the unfit phase?
>
> **A:** No.

The court then accepted the plea and determined that there were adequate grounds for finding Brenda unfit. At no time did Brenda state that she had just been involved in an automobile accident and was emotionally distraught and/or physically ill. Brenda did not ask for additional time or indicate dissatisfaction with Attorney Lueschow; nor did she indicate she wanted to retain her own attorney as is her prerogative under WIS. STAT. § 48.23(5).[6]

¶6 At the dispositional hearing on September 23, 2022, Brenda testified and called witnesses with the assistance of Attorney Lueschow. During the hearing, Brenda took time to confer with her counsel off the record (at the conclusion of Brenda's mother's testimony). Lueschow made a strong and impassioned argument that there was a substantial relationship between the child and Brenda and that that relationship should not be severed lest it cause harm to

---

[6] WISCONSIN STAT. § 48.23(5) provides "Regardless of any provision of this section, any party is entitled to retain counsel of his or her own choosing at his or her own expense in any proceeding under this chapter."

the child. At no time during the dispositional hearing did Brenda indicate that she was hesitant and did not want to proceed.

¶7 The circuit court found that termination of Brenda's parental rights was in Amelia's best interest, citing, among other factors, that the child had not been in Brenda's home since birth, had a very strong likelihood of being adopted, had a very strong relationship with her foster parents, and was not likely to be harmed by the severance of relationships with Brenda and her biological family members. The court therefore granted the County's petition.

¶8 After the order terminating Brenda's parental rights was entered, Brenda retained appellate counsel who filed a motion requesting a remand back to the circuit court. This court, finding good cause, issued an order on March 9, 2023, granting Brenda's motion for a remand "to the circuit court for the purpose of necessary fact-finding regarding whether she discharged her [second] trial attorney." Brenda's motion for post-termination relief was to be filed in the circuit court by March 16, 2023, and was to "present all grounds for relief."

¶9 Following the order of this court, Brenda filed a written motion seeking a new trial pursuant to WIS. STAT. § 801.15(4). Brenda asserted that she had asked Attorney Lueschow to withdraw prior to her change of plea, and that Lueschow's failure to withdraw from the case constituted a violation of SCR 20:1.16(a)(3), which provides that "a lawyer … shall withdraw from the representation of a client if … the lawyer is discharged." At a hearing on this motion, now relying instead on WIS. STAT. § 805.15(1), Brenda testified that she had asked Lueschow to withdraw multiple times, beginning in May, 2022, and that her reasons for this request included (among other things) Lueschow's refusal to negotiate a settlement with the County, Brenda's concerns about the security of

5

Lueschow's computer system, Lueschow's inappropriate attitude and demeanor towards Brenda, and Lueschow's advice to plead no contest rather than to proceed with a jury trial on the grounds/fitness phase, as Brenda purportedly wanted. Brenda's new counsel did not call any witnesses other than Brenda, whose testimony was replete with hearsay statements.

¶10    The circuit court did not find Brenda to be a credible witness.  It denied her motion for a new trial on the basis of Attorney Lueschow's failure to withdraw, noting that "it's generally a good practice to follow up on [communication of a desire to discharge] and not run to the office, so to speak, and prepare a motion to withdraw … and see if time may allow for an opportunity to continue representation."  The court also declined to order a new trial "in the interests of justice," stating that it didn't "feel on this record there is a sufficient basis for [the circuit court] to determine in the interests of justice under [WIS. STAT. §] 805.15(1) that a new trial should be granted for the mother."

¶11    Brenda appeals, arguing that she is entitled to a new trial on the termination of her parental rights due to Attorney Lueschow's alleged violation of SCR 20:1.16(a), the circuit court's "unfair credibility determination" at the post-disposition hearing on remand, and in the interest of justice pursuant to WIS. STAT. § 805.15(1), or in the alternative, to remedy a miscarriage of justice with a discretionary reversal pursuant to WIS. STAT. § 752.35.  For the reasons set forth below, this court affirms the circuit court.

**STANDARD OF REVIEW**

¶12    "The legislature and [our supreme] court have made clear that the best interests of the child is the polestar of all determinations under [WIS. STAT.]

ch. 48." ***David S. v. Laura S.***, 179 Wis. 2d 114, 149-50, 507 N.W.2d 94 (1993). "A determination of the best interests of the child in a termination proceeding depends on first-hand observation and experience with the persons involved and therefore is committed to the sound discretion of the circuit court." ***Id.*** at 150. "The exercise of discretion requires a rational thought process based on examination of the facts and application of the relevant law." ***Id.***

¶13 A circuit court's ruling on a motion for a new trial in the interest of justice is also within its discretion. ***State v. Williams***, 2006 WI App 212, ¶13, 296 Wis. 2d 834, 723 N.W.2d 719. Appellate courts "will affirm unless there is a clear showing of [an erroneous exercise] of discretion," ***Totsky v. Riteway Bus Serv., Inc.***, 2000 WI 29, ¶46, 233 Wis. 2d 371, 607 N.W.2d 637, and will "look for reasons to sustain a [circuit] court's discretionary decision." ***Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.***, 2009 WI 73, ¶32, 319 Wis. 2d 52, 768 N.W.2d 596.

¶14 Simply put, appellate courts owe "great deference" to a circuit court's decision to grant—or deny—a motion for a new trial in the interest of justice. ***Sievert v. American Fam. Mut. Ins. Co.***, 180 Wis. 2d 426, 431, 509 N.W.2d 75 (Ct. App. 1993), *aff'd*, 190 Wis. 2d 623, 528 N.W.2d 413 (1995). "This is because the order is itself discretionary, and the [circuit] court is in the best position to observe and evaluate the evidence." ***Seivert***, 180 Wis. 2d at 431.

### DISCUSSION

¶15 The decision to terminate a parent's rights to their child is, perhaps, one of the most substantial and overwhelming determinations a circuit court (or any court) will make. It carries with it a grievous loss to the parent while at the same time affords the greatest opportunity for a child to have a safer and better

future. It is never to be taken lightly. The circuit court in this case took great care to thoughtfully apply all standards and factors at each stage of this case.

¶16 "Although 'the paramount goal' of Chapter 48 of the Wisconsin Statutes 'is to protect children and unborn children,' the Children's Code also aims 'to preserve the unity of the family, whenever appropriate, by strengthening family life through assisting parents ... whenever appropriate, in fulfilling their responsibilities as parents." *Eau Claire Cnty. Dep't of Hum. Servs. v. S.E.*, 2021 WI 56, ¶2, 397 Wis. 2d 462, 960 N.W.2d 391 (quoting WIS. STAT. § 48.01(1)(a)). Throughout a TPR case, the circuit court must remain cognizant that the "integrity of the family has been deemed subject to constitutional protection through the due process clause of the Fourteenth Amendment to the United States Constitution." *Mrs. R. v. Mr. & Mrs. B.*, 102 Wis. 2d 118, 132, 306 N.W.2d 46 (1981). As stated in *Brown County v. Shannon R.*, 2005 WI 160, ¶59, 286 Wis. 2d 278, 706 N.W.2d 269 (citations omitted), "[a]lthough they are civil proceedings, termination of parental rights proceedings deserve heightened protections because they implicate a parent's fundamental liberty interest."

¶17 "The rights of the parent must be accorded a high order of respect and must be considered paramount until circumstances show that the parent has forfeited these rights." *Minguey v. Brookens*, 100 Wis. 2d 681, 689, 303 N.W.2d 581 (1981); *see also James v. Fish*, 246 Wis. 474, 477, 17 N.W.2d 558 (1945). That is because "[a] parent's desire for and right to the companionship, care, custody, and management of his or her children is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection." *Brown Cnty. Dep't of Hum. Servs. v. Brenda B.*, 2011 WI 6, ¶29,

331 Wis. 2d 310, 795 N.W.2d 730 (quoting *Sheboygan Cnty. Dep't of Health & Hum. Servs. v. Julie A.B.*, 2002 WI 95, ¶22, 255 Wis. 2d 170, 648 N.W.2d 402).

¶18     There are dueling issues in this appeal.  Appellant Brenda asserts that the circuit court erroneously exercised its discretion by failing to grant her a new trial in the interest of justice.  She contends the court inappropriately faulted her for not making her dissatisfaction with her second attorney known to the court, inappropriately speculated as to why an attorney would not withdraw when discharged, and erroneously found her not to be credible at the remand hearing.  In the last regard, Brenda further contends that the court made an unfair credibility determination of her remand hearing testimony.  Based upon those grounds, she seeks a new trial under WIS. STAT. § 805.15(1).

¶19     Respondent County starts with the law and statutes.  Without a jury trial and a verdict, the County asserts that a new trial cannot be granted under WIS. STAT. § 805.15(1).  Not only that, but Brenda's motion—a motion the County contends is procedurally and statutorily deficient—is untimely under the statutes.  Next, the County looks to the Supreme Court Rules and notes there is no legal basis for a new trial as a remedy for a violation of SCR 20:1.16.  Finally, the County argues that the circuit court's decision was not clearly erroneous and to overturn it would be to fly in the face of legislative goals of expeditious litigation

and finality in TPR cases. For the reasons that follow, this court agrees with the County.[7]

### I. Brenda is not statutorily entitled to a new trial under WIS. STAT. § 805.15(1).

¶20    As is always appropriate, this court begins with the law. WISCONSIN STAT. § 805.15(1) permits a party to "move to set aside a verdict and for a new trial" in certain circumstances, including "in the interest of justice." The statutory provision, entitled "New trials," comes into play following a trial that has culminated in a verdict. *Manly v. State Farm Fire & Cas. Co.*, 139 Wis. 2d 249, 254, 407 N.W.2d 306 (Ct. App. 1987) ("[Section] 805.15(1) … and its companion, [WIS. STAT. §] 805.16, apply specifically to motions after verdict in jury cases.").

¶21    In all of the cases cited above regarding a lower court's discretion to grant or deny a motion for a new trial in the interest of justice, there was *first* a jury trial that resulted in a verdict. True, there are court trials and jury trials (and both are "trials,") but, WIS. STAT. § 805.15(1) relates to jury trials as is evidenced by the legislature's use of the word "verdict"—something not found in a court trial. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (explaining that statutory language is given its "common, ordinary, and accepted meaning"). Brenda even concedes that "this matter was not tried."

---

[7] Moreover, Brenda failed to file a timely reply to the County's brief citing authority in support of upholding the circuit court's order. Brenda's counsel's motion for extension of time (filed past the due date for the reply brief) sought sixty days in which to file a reply brief contrary to the mandate in WIS. STAT. § 809.107(6)(c) that requires TPR appellants to file replies "within 10 days after service of ... the respondent's brief." Over the objection of the County, this court allowed Brenda to file her reply brief on or before May 26, 2023. A reply was filed on that date and has been given consideration by this court.

¶22 This is not to say that a party in Brenda's position cannot challenge a circuit court's findings of fact and/or conclusions of law following a court trial, but that must be appropriately done via a motion for reconsideration. WISCONSIN STAT. § 805.17, aptly entitled "Trial to the court," contains the statutory steps to challenge a circuit court's order following a trial to the court: a motion for reconsideration must be "made not later than 20 days after entry of judgment." Sec. 805.17(3). That reconsideration motion "may be made with a motion for a new trial." *Id.* Brenda did not move for reconsideration—timely or otherwise.

¶23 Finally, even if the plain meaning of the word "verdict" is disregarded and it is either found to be superfluous or its definition is expanded to include a circuit court's findings of fact and/or conclusions of law at the conclusion of a trial to the court, WIS. STAT. § 805.15(1) requires a motion to be filed pursuant to the deadlines set forth in WIS. STAT. § 805.16. The motion must be filed within twenty days of the verdict (or under other circumstances not applicable to Brenda's appeal). Here, the circuit court entered an order (considered a "verdict" by Brenda) on September 23, 2022 and the motion for a new trial was filed at least 173 days later.

¶24 That alone should conclude this appeal. Moreover, a further review of the statutes reveals (assuming again that there was a timely motion for a new trial), that that motion must be heard "not less than 10 nor more than 60 days after the verdict is rendered, [absent an enlargement of the time]." WIS. STAT. § 805.16(2). And motions for new trials under § 805.15(1) must be decided by the circuit court "within 90 days after the verdict is rendered ... [or] the motion is considered denied and judgment shall be entered on the verdict." Sec. 805.16(3). In this appeal, the motion for a new trial was not filed within twenty days of the

11

TPR order, the hearing on the new trial motion was not held between ten and sixty days from the TPR order, and there was no decision within ninety days of the TPR order. *See **Gegan v. Backwinkel***, 141 Wis. 2d 893, 898, 417 N.W.2d 44 (Ct. App. 1987) (holding that, following the passage of over ninety days, there was no further jurisdiction with the circuit court to rule on a postverdict motion (even when the first judge was injured and unable to perform the court's duties) when the party attempted to use a different statute to seek relief, because a court "cannot achieve the same result through other means, such as ordering a new trial in the interests of justice").

¶25    Brenda's request, practically speaking, is to have this court reinterpret the definition of verdict so as to afford her relief[8] in a manner that our supreme court has expressly prohibited in a similar context. In ***Gillard v. Aaberg***, 5 Wis. 2d 216, 219-20, 92 N.W.2d 856 (1958), where a party was seeking to use the time limits in Wis. Stat. § 806.07(1) to overcome untimeliness under Wis. Stat. § 805.16, that court held that:

> [Wis. Stat. § 270.49(1), the predecessor to Wis. Stat. § 805.16] relates to motions 'to set aside a verdict and grant a new trial.' In our opinion its application is limited to cases where a verdict has been rendered by a jury. To give it a broader construction would not only stretch the term 'verdict' beyond the usage common in law, but would also create undesirable conflict with [Wis. Stat. §] 269.46(3) [the predecessor to Wis. Stat. § 806.07(1)(h)].

---

[8] In another argument, one that is not developed by any citation to case law or other authority, Brenda asserts that the "fact" that her attorney did not immediately withdraw was a violation of SCR 20:1.16 that somehow automatically provides Brenda the remedy of a new trial. There is no legal basis for an assertion that a violation of the *Rules of Professional Conduct for Attorneys* in the Wisconsin Supreme Court Rules carries with it not only a basis to sanction attorneys but a concomitant litigation remedy to clients who have been wronged. This court need not address undeveloped arguments or those unsupported by adequate authority. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶26   For any of the many reasons set forth above, Brenda is not statutorily entitled to a new trial in the interest of justice under WIS. STAT. § 805.15(1).  This court, however, did remand the matter back to the circuit court to afford Brenda an evidentiary hearing to determine if a new trial was warranted.  A review of the circuit court's deliberations is, accordingly, appropriate.

### II.    The circuit court did not erroneously exercise its discretion by denying Brenda's motion for a new trial.

¶27   Assuming that WIS. STAT. § 805.15(1) applies in this case and that there was a timely motion made pursuant to WIS. STAT. § 805.16, it is true that "a [circuit] court may set aside a jury verdict and order a new trial in the interest of justice." *Deannia D. v. Lamont D.*, 2005 WI App 264, ¶11, 288 Wis. 2d 485, 709 N.W.2d 879.  "[G]reat deference," however, is still to be accorded to that court's exercise of its discretion.  *Id.* (citing *Sievert*, 180 Wis. 2d at 431).  For Brenda to obtain this relief, the circuit court must have clearly erred in its exercise of discretion when it denied Brenda's motion for a new trial at the conclusion of the evidentiary hearing upon remand.  *See Totsky*, 233 Wis. 2d 371, ¶46; *Deannia D.*, 288 Wis. 2d 485, ¶11; *Williams*, 296 Wis. 2d 834, ¶13.

¶28   At the remand hearing, Brenda's new counsel was inconsistent on the statutory basis for the new trial and had difficulties tethering the motion to statutes or case law:

> We're seeking a new trial today, but not because of newly discovered evidence.  Nor are we unmindful of how an appointed attorney is discharged.  Rather, we're proceeding today under the last phrase of Section 805.15(1), which is a party may seek a new trial in the interest of justice.  I did not include anything specific in my motion about that because, to be honest, I could not find a case on point.
>
> ….

> Now, if we go to testimony, [Brenda] will testify that she did ask Attorney Lueschow to withdraw from the case because she discharged her, but that Attorney Lueschow did not abide by that request. So, here, because the controversy was never tried because [Brenda] ultimately admitted to the allegations, and I think that was on August 22nd, 2022, and--August 2nd, 2022. She entered a no contest plea and the matter was never tried. Then, under the [*State v. Harp*, 161 Wis. 2d 773, 469 N.W.2d 210 (Ct. App. 1991)] rule, [Brenda] would not be required to show today that we would have a different result.

¶29 At this hearing, Brenda switched to an entirely new statutory provision, one that the County had obviously not addressed in its written response to the motion for a new trial. Regardless, the circuit court allowed Brenda to proceed on that new ground and took her testimony, as well as heard argument by both counsel. The court then summarized what it based its decision on:

> Okay. I did have an opportunity to hear the testimony, hear the positions of the parties, review the file, review at least some of the transcripts. I didn't read through them all in preparation for today's hearing, but I did have an opportunity to review some of the transcripts from some of the previous proceedings.

¶30 The circuit court next summarized the procedural history of the case, the termination of Brenda's first counsel, and then went into great detail as to the colloquy at the plea hearing on the grounds/fitness phase, as well as Brenda's testimony at the dispositional hearing. In that regard, the court noted that Brenda began her testimony at the remand hearing by stating she had never testified before the court; something that was patently incorrect.

¶31 The circuit court then weighed the credibility of Brenda's testimony and made the following findings on the record:

- Brenda was able to advocate for herself and asserted a request to have a new (second) counsel appointed.

14

- Brenda testified she had the resources to hire her own attorney, but even though the TPR was pending for a long time, she did not do so. She had sufficient time had she wished to proceed that way.

- At the plea colloquy, Brenda "indicated by the Court's questions that she was satisfied with the advice and assistance she received from her attorneys. So, she gave absolutely no indication that she was dissatisfied with her attorney at that time, wanted to have a new attorney."

- Brenda testified at the remand hearing without any hesitation or degree of confusion. The same applied to the dispositional hearing.

- There were no requests to the circuit court at any time (up to the remanded motion) for the withdrawal of Attorney Lueschow.

- It was reasonable, given the heightened emotional turmoil a TPR can instill in parties, that an appointed attorney would try to stay on the case and discuss representation with a parent notwithstanding a request that the attorney withdraw.

¶32 Based upon its review of the pleadings, the oral argument, Brenda's testimony, the lack of testimony from Brenda's second attorney, and the findings noted above, the circuit court deliberated and then set forth its decision and noted concerns about Brenda and her motion:

> But the Court has some significant credibility concerns here with regards to the mother's testimony today and how it reconciles with the record in this case.
>
> And so I don't think it's in the interest of justice here to grant this. I know that term is not a very well defined term, especially as it applies to trial courts in granting new trials. But I don't feel on this record there is a sufficient basis for this Court to determine in the interests of justice under [WIS. STAT. §] 805.15(1) that a new trial should be granted for the mother.

¶33 The circuit court conducted a careful and detailed deliberation. It listed the materials read and other sources of information it had received through

both argument and testimony. It weighed Brenda's credibility, the sole witness to testify, and noted her composure at all three hearings, the length of the TPR proceeding, and the lack of any contemporaneous substantiation of Brenda's claim as compared to the record. The court then balanced all of the evidence and concluded that it was not reasonable that Brenda could have so completely testified at the plea colloquy and dispositional hearing and have failed to request new counsel if that truly was her intent, especially since she indicated she had access to funds to retain a private attorney.

¶34 In some respects, this appeal is akin to a motion to withdraw a plea. While not clearly on point, the case law for such plea withdrawals is instructive here. The United States "Constitution sets forth the standard that a guilty or no[-]contest plea must be affirmatively shown to be knowing, voluntary, and intelligent." *State v. Bangert*, 131 Wis. 2d 246, 260, 389 N.W.2d 12 (1986); *State v. Howell*, 2007 WI 75, ¶23, 301 Wis. 2d 350, 734 N.W.2d 48. Without those three basic prerequisites, "a defendant [or parent] is entitled to withdraw the plea as a matter of right because such a plea 'violates fundamental due process.'" *State v. Brown*, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906 (quoting *State v. Van Camp*, 213 Wis. 2d 131, 139, 569 N.W.2d 577 (1997)); *see also Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) ("[A] plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality." (footnote omitted)).

¶35 Wisconsin requires a circuit court to conduct a personal colloquy with the defendant in order to memorialize what a defendant, or in this case, parent, knew at the time of the plea itself. WIS. STAT. § 971.08(1); *Bangert*, 131

Wis. 2d at 256-57. The reason for this personal touch is to "assist the [circuit] court in making the constitutionally required determination that a [parent's] plea is voluntary." ***Bangert***, 131 Wis. 2d at 261.

¶36 Brenda would have this court believe that the circuit court was clearly in error for listening to her testimony—during the plea colloquy and the dispositional hearing (and all hearings in between)—and taking her statements, testimony and demeanor at face value. First-hand observation and experience with parties before it are a circuit court's bread and butter. Appellate courts do not have the extraordinary benefit of being able to watch and listen to the parties as they appear in court, and watch and listen to parties as they testify and interact with their counsel, opposing counsel, and the circuit court itself.

¶37 If a party appears to be coherent, speaks clearly and without outward appearance of nervousness, evasiveness, or duress, a court is well within its discretion to accept that party's statements as true, uncoerced, and complete. If a party testifies to the court under oath (not once, but twice), the court is entitled to consider that testimony to be true and complete. In this case, the circuit court observed Brenda at the plea hearing where her second counsel—whom Brenda did not appear to fear or openly disdain—thoroughly walked her though a lengthy colloquy to establish that the no-contest plea was freely, voluntarily, and intelligently made by Brenda. The court even followed up and asked its own string of questions to assure the same:

> **Q** Have you had enough time to think about your decision to not contest the unfit phase?
>
> **A** Yes.
>
> **Q** Do you feel like you've had enough time to talk with your attorney about that decision?

**A**     Yes.

**Q**     Do you have any questions you'd like to ask your attorney or you'd like to ask me about anything that's happened so far?

**A**     No.

**Q**     Are you satisfied with the legal advice and assistance you've received from your attorney?

**A**     Yes.

**Q**     Is there anything else you wish to tell me or say on the record here today involving the grounds for the unfit phase?

**A**     No.

¶38     At any point in time during the colloquy with her counsel or even with the circuit court, Brenda could have stopped the proceedings and, if not request to seek new counsel (or time to hire her own counsel), she could have sought additional time. She had already done that once. She didn't do so and the court had no reason to suspect Brenda had any concerns with her then-current attorney.

¶39     Brenda contends that she "allowed herself to be persuaded to waive the jury trial" because the "moments were pressurized" and "[d]ecisions were made quickly." She asserts that it would have been "counterintuitive to express her dissatisfaction" with Attorney Lueschow even though "the relationship was a nightmare." Brenda also asserts that the circuit court's plea colloquy was "pro forma," that judges ask "rapid fire" questions "making the expected answer obvious" to the parent, and that "it is a rare person that has the fortitude to stray from the obvious and expected answer." Brenda, her counsel asserts, was not one of those rare people. There are multiple reasons why each of these assertions is simply incorrect.

¶40 First, Brenda had already discharged one attorney in the middle of a hearing without difficulty. She had witnessed Neil discharge two attorneys. She was under oath during the plea colloquy, so she had a heightened sense that she was to be honest to the circuit court. The questions from the court do not appear to be "pro forma," but rather detailed and thorough. The court began by inquiring whether Brenda had enough time to think about her decision and concluded by asking if there was anything else she wanted to tell the court. While the transcript is in black and white and there is no ability for this court to determine if the questions were "rapid fire," Brenda never raised this concern at the plea colloquy, at the following dispositional hearing, or at the remand hearing. It is rather convenient to accuse the circuit court at this point in time. More telling, Brenda speaks in generalities and does not specifically assert that *this circuit court* was harsh or abrupt with her at her colloquy. She merely complains that asking her to express her dissatisfaction with Lueschow would be "completely unrealistic and substantively unfair." This court declines to accept an argument not actually made, or at the very least one that has no contemporaneous substantiation (at either the dispositional hearing or the remand hearing).

¶41 Then, at the hearing on dispositional/best interest phase where she testified under oath again, Brenda took time following the direct examination of her mother to confer with Attorney Lueschow. This cooperation with her attorney is inconsistent with that of an individual who has discharged her counsel and is in fear of her irrational and inappropriate behavior.

¶42 Brenda's appellate counsel tries to obfuscate the issue by asserting the second attorney was discharged, so nothing else matters. This flies in the face of what a circuit court is to do when assessing parties who appear in court: it is to

19

use its eyes and ears. It is to take into consideration whether the individual is testifying under oath and to weigh the credibility of the witnesses it personally observes in its courtroom. This court is to "look for reasons to sustain a [circuit] court's discretionary decision." *Farmers Auto. Ins.*, 319 Wis. 2d 52, ¶32. It is not to disregard measured deliberation nor is it to invent grounds or inferences to counter rational decision-making. Finally, it is not to consider arguments newly made on appeal. *Gibson v. Overnite Transp. Co.*, 2003 WI App 210, ¶9, 267 Wis. 2d 429, 671 N.W.2d 388.

¶43 Thus, even assuming that Brenda's motion was statutorily authorized, appropriate in the absence of a jury trial and verdict, and timely made, she has failed to establish any error in the circuit court's ruling. That court engaged in a rational thought process based upon an examination of all facts and an application of those facts to the relevant law. Accordingly, there has been no showing that the circuit court erroneously exercised its discretion when it denied Brenda's motion for a new trial.

### III. Brenda has not established a meritorious basis for a discretionary reversal pursuant to WIS. STAT. § 752.35.

¶44 In a single paragraph of her initial brief and as an alternative remedy mentioned once in the reply brief, Brenda clarifies the basis for her requested relief as follows:

> So to be clear, simply put, [Brenda] seeks a new trial in the interest of justice under §805.15(1), Wis. Stats., or in the alternative, seeks any remedy deemed appropriate by this Court under §752.35, Wis. Stats., because Atty Lueschow's failure to withdraw when discharged denied [Brenda] her constitutional and statutory right to an attorney of her choosing in these TPR proceedings.

20

¶45    Brenda is referring to WIS. STAT. § 752.35, which provides for discretionary reversal in an appellate case

> if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, … regardless of whether the proper motion or objection appears in the record … [and as] necessary to accomplish the ends of justice.

¶46    When determining whether justice has miscarried under WIS. STAT. § 752.35, there must be "a substantial probability that a new trial would produce a different result." *State v. Kucharski*, 2015 WI 64, ¶5, 363 Wis. 2d 658, 866 N.W.2d 697; *State v. Murdock*, 2000 WI App 170, ¶31, 238 Wis. 2d 301, 617 N.W.2d 175.   Practically speaking, appellate courts "have held that 'only in exceptional cases' is it appropriate for a reviewing court to exercise its discretion to grant a new trial in the interest of justice." *Kucharski*, 363 Wis. 2d 658, ¶5 & n.7 (quoting *State v. Armstrong*, 2005 WI 119, ¶114, 283 Wis. 2d 639, 700 N.W.2d 98).

¶47    It could be said that Brenda has not developed this discretionary reversal argument—she merely repeats all of her previous arguments—and for that reason it could be rejected out of hand. *See Dane Cnty. Dep't of Human Servs. v. J.R.*, 2020 WI App 5, ¶26, 390 Wis. 2d 326, 938 N.W.2d 614.   However, it appears that she is basing this alternative remedy on the same grounds as she asserts for her "new trial" under WIS. STAT. § 805.15(1).   For the same reasons that this court rejected her arguments under that statute, this alternative remedy must also be rejected.   In addition, this appeal was specifically remanded back to the circuit court to consider whether, in the interest of justice, Brenda was entitled to a new trial because she had discharged her attorney.   This is, in fact, an exceptional case—but not in the sense that it is one that cries out for a

21

discretionary reversal by this court. This appeal is unusual in that the main issue on appeal has been reconsidered by the circuit court at an evidentiary hearing where the appellant was able to testify under oath. The real controversy was considered *twice* by the circuit court. There has been no miscarriage of justice. For all the reasons set forth above, this court will not apply WIS. STAT. § 752.35 to reverse the well-reasoned, deliberative and thoughtful ruling by the circuit court following the earlier remand.

## CONCLUSION

¶48    This court is cognizant that a termination of parental rights is one of the most consequential of judicial acts because it will extinguish forever any legal recognition of the rights and obligations between parents and children. This court is also aware that the legislature has, wisely, determined that such cases be resolved as quickly as possible while balancing all of the competing interests, including the unity of families, a parent's fundamental rights to be a parent, and a child's paramount interest in achieving a safe and permanent home as quickly as practicable.

¶49    Based upon the foregoing, this court concludes that Brenda has failed to establish that she is statutorily entitled to a new trial in the interest of justice pursuant to WIS. STAT. § 805.15(1) or to a discretionary reversal to prevent a miscarriage of justice because the real controversy was not tried pursuant to WIS. STAT. § 752.35. Nor has she established that the circuit court erroneously exercised its discretion when it denied her motion upon remand.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.